## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 8:19-cr-00077-PX-8 |
| ) | |
| AFIK TORI, ) | |
| *Defendant*. ) | |

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

### I.   INTRODUCTION

Afik Tori, by and through undersigned counsel, respectfully files this Memorandum in Aid of Sentencing. Mr. Tori comes before this Court humbled, contrite, and extraordinarily remorseful for his actions which have brought him before it upon accepting responsibility and entering a plea of guilty to 1 count of Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349. *See generally* PSR.

Based upon his personal history and characteristics, the nature and circumstances of the offense, his lack of criminal history, and his unlikelihood of recidivism, Mr. Tori respectfully requests that the Court impose a sentence of 6 months of incarceration to be served at the Federal Prison Camp in Otisville, New York, and a term of supervised release to be served in Israel. Such a sentence would be "sufficient, but not greater than necessary" to achieve the legitimate purposes of sentencing. 18 U.S.C. § 3553(a).

### II.   MR. TORI'S BACKGROUND

In 1992, Mr. Tori was born in New York, New York, to the marital union of Joseph Tori and Carmit Tori. *See* PSR at ¶ 52. Mr. Tori remembers his childhood as "normal." *Id.* at ¶ 53. He grew up with 2 sisters, *see id.* at ¶ 52, and "had a lot of friends, attended private school, and was

1

part of the Jewish community," *id.* at ¶ 53. Despite his parents' divorce when he was 14 years old, Mr. Tori has a close-knit family. *See id.* At the age of 18, Mr. Tori and his family moved to Israel. *See id.* at ¶ 55.

In May 2014, Mr. Tori graduated with his bachelor's degree in psychology from The Interdisciplinary Center Herzliya (now known as Reichman University) in Herzliya, Israel. *See id.* at ¶ 59. Mr. Tori ultimately went on to earn his master's degree in financial economics in May 2022, through Reichman University. *See id.*

Mr. Tori was employed with various entities from the time he left Yukom to when he was arrested in the instant case.[1] *See id.* at ¶¶ 60-66.

### III.   THE LEGAL FRAMEWORK OF AN ADVISORY GUIDELINE RANGE

While this Court must still correctly calculate the guideline range, *see Gall v. United States*, 552 U.S. 38, 49 (2007), it may not treat that range as mandatory or presumptive, *see id.* at 51; *see also Nelson v. United States*, 555 U.S. 350, 352 (2009), but as "one factor among several" to be considered in imposing an appropriate sentence under § 3553(a). *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). The Court must "consider all of the § 3553(a) factors," *Gall*, 552 U.S. at 49-50, "make an individualized assessment based on the facts presented," *id.*, and explain how the facts relate to the purposes of sentencing. *See id*. at 53-60; *see also Pepper v. United States*, 131 S. Ct. 1229, 1242-43 (2011). The Court's "overarching" duty is to "'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Kimbrough*, 552 U.S. at 101; *Pepper*, 131 S. Ct. at 1242-43.

---

[1] Upon reviewing the final PSR, Mr. Tori's tutoring activities were not included in it. *See, e.g.*, Exhibit S (letter from someone he tutored); Exhibit T (same). Defense counsel asks that the Court to incorporate this information into the PSR.

In order to ensure that the guidelines are truly advisory and constitutional, this Court has the authority to disagree with a guideline as a matter of policy. Because "the Guidelines are now advisory . . ., as a general matter, courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough*, 552 U.S. at 101-02 (internal punctuation omitted) (*citing Rita v. United States*, 551 U.S. 338, 351 (2007) (holding that district courts may find that the "Guidelines sentence itself fails properly to reflect § 3553(a) considerations").

Additionally, "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). Permitting sentencing courts to consider the widest possible breadth of information about a defendant "ensures that the punishment will suit not merely the offense but the individual defendant." *Pepper*, 131 S. Ct. at 1240 (citing *Wasman v. United States*, 468 U. S. 559, 564 (1984)).

In this regard, "the district court's job is not [even] to impose a reasonable sentence. Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." *United States v. Foreman*, 436 F.3d 638, 644, n.1 (6th Cir. 2006). Accordingly, "if a district court were explicitly to conclude that two sentences equally served the statutory purpose of § 3553, it could not, consistent with the parsimony clause, impose the higher." *United States v. Ministro-Tapia*, 470 F.3d 137 (2d Cir. 2006).

IV.     THE APPLICABLE U.S. SENTENCING GUIDELINES RANGE

According to the plea agreement and the PSR in this matter, the parties agree that the following Sentencing Guidelines sections apply:

| | |
|---|---:|
| U.S.S.G. §§ 2X1.1, 2B1.1(a)(1) – Base Offense Level | 7 |
| U.S.S.G. § 2B1.1(b)(1)(J) – Loss More than $3,500,000 but Less than $9,500,000 | +18 |
| U.S.S.G. § 2B1.1(b)(2)(B) – Substantial Hardship to Five or More Victims | +4 |
| U.S.S.G. § 2B1.1(b)(10)(B), (C) – Sophisticated Means | +2 |
| **Adjusted Offense Level** | **31** |
| U.S.S.G. §3E1.1(a) – Acceptance of Responsibility | -2 |
| U.S.S.G. §3E1.1(b) – Acceptance of Responsibility | -1 |
| **Total Offense Level** | **28** |

*See* PSR at 9.

Mr. Tori has a criminal history score of 0; he, therefore, has a criminal history category of I for sentencing purposes. *See* PSR at ¶ 46. As of November 1, 2023, the U.S. Sentencing Guidelines provide individuals with 0 criminal history points, such as Mr. Tori, with a 2-level reduction from the offense level. *See* U.S.S.G. § 4C1.1. Although not addressed in the PSR, defense counsel requests that the Court apply the 2-level reduction, affording Mr. Tori a total offense level of 26. The government does not object to the 2-level reduction.

Should the Court apply the 2-level reduction requested above, Mr. Tori's total offense level of 26 combined with a criminal history category of I produces a Guidelines' range of 63 to 78 months of incarceration.

V.   **18 U.S.C. § 3553(a) FACTORS**

As the Court is well aware, the Sentencing Guidelines are not mandatory, and while the Court must consult the Guidelines and take them into account at sentencing, *see United States v. Booker*, 125 S. Ct. 738, 767 (2005), Section 3553(a)(1) provides a "broad command to consider 'the nature and circumstances of the offense and the history and characteristics of the defendant.'" *Gall*, 552 U.S. at 50 n. 6. The command is consistent with the Supreme Court's observation that "the punishment should fit the offender and not merely the crime." *Pepper*, 131 S. Ct. at 1240 (citing *Williams v. New York*, 337 U.S. 241, 247 (1949)). It is similarly consistent with Congress'

4

express directive that "[n]o limitation shall be placed on the information" a sentencing court may consider "concerning the [defendant's] background, character, and conduct." *Id.* (citing 18 U.S.C. § 3661).

### A.     The Nature and Circumstances of the Offense

Mr. Tori's involvement in the instant offense is extraordinarily regrettable. Mr. Tori does make excuses for his conduct. He fully understands that he has caused harm to innocent individuals and that he must face the consequences head on.

In his letter to the Court, Mr. Tori references a quote that recently resonated with him: "The worst part of being so poor, is knowing how rich I am." Exhibit A. Over the past 11 months, Mr. Tori has felt "poor" for not being able to spend time with his loved ones, for missing out on professional and social opportunities, and for reverting to financially depending on his parents. *Id.* For him, the saddest part is, despite being "rich" and having everything he needs to live an honest life with integrity, he brought this suffering on himself. *Id.*

Mr. Tori assures the Court that he "will never put [himself] in such a scenario again. [He] vow[s] to society that [he] will pass better judgement when conducting business and to never exploit others for monetary gain again." *Id.* Notably, Mr. Tori makes this promise because he "now acknowledges that in order to benefit from society, you must respect it." *Id.* While impossible, he wishes he could turn back time to undo the pain and damage he has caused others as a result of the conduct at issue. *See id.*

Mr. Tori knows he can only move forward—and he will do so in strides. Mr. Tori benefits from the perspective he has developed since leaving Yukom, where the conduct at issue occurred many years ago. During his time in graduate school and his employment with Intercontinental Exchange, he has seen what it feels like to live life the right way; he now "look[s] forward to the

5

day [he is] let back into society to build the rest of [his] life." *Id.* Through reflection over the past 11 months, Mr. Tori has realized that the best, most fulfilling moments in his life were those in which he lived honestly and made great strides in his personal growth. And he is committed to fully embracing this lesson, to the benefit of both himself and society and to the inspiration of others.

        **B.**        **Mr. Tori's Personal History and Characteristics**

Mr. Tori is "an extraordinary individual both on the social and professional side." Exhibit K. He is "an honest, hardworking, dedicated, loyal, and . . . honorable man." Exhibit I. And "[h]e is loved and admired by everyone around him." Exhibit B.

As Mr. Tori's stepfather explained, "[o]ne of the things that stands out about his personality is his generosity[,] as [h]e will always help those who need it as much as he can." Exhibit E. Joshua Buniak recalls when he "witnessed the greatest acts of human kindness to ever be observed." Exhibit I. When Mr. Buniak was diagnosed with a spinal cord tumor and underwent several operations and months of rehabilitation, Mr. Tori helped him put on his shoes every day, drove Mr. Buniak to and from physical therapy several times a week, and was there for him in a way that was "nothing short of a brother." *Id.* But exceptional kindness is the norm for Mr. Tori. "[Mr. Tori] is a good friend, the kind you don't find today. He is always there for those who need him, with good advice, a smile[,] and a smart thought." Exhibit P.

Mr. Tori shows the same exceptional kindness even to strangers. His mother remembers years back when he heard about a fire that destroyed a few homes, and Mr. Tori "filled up his car with home appliances and drove down to the disaster area to give it to the people in need." Exhibit B. Recently, Mr. Tori's desire to give has brought him great pain, as he has been unable to help his community during the recent events in Israel.

6

Other qualities that stand out for Mr. Tori are his honesty and integrity. *See* Exhibit E. Indeed, he is "beyond a good person" who people can count on to help put them in the right direction when they are on the wrong path. Exhibit H. A longtime friend of Mr. Tori, Josh Lester, submits that he has "full confidence" that Mr. Tori is someone in which he can always instill his "full and unwavering trust . . . without concern." Exhibit J. Part of the trust people place in Mr. Tori has to do with his notable sense of responsibility. *See* Exhibit L. "If [Mr. Tori] gives his word or commits to something[,] he always makes a point of seeing it through and treating his commitments with the highest priority." *Id.*

Mr. Tori is also extremely intelligent and capable. He excelled in school and continues to do so in professional settings. He constantly challenges himself by pushing to go to new limits. *See* Exhibit C. And he puts the same amount of effort for others to succeed that he puts into his own success. In fact, in the past year, Mr. Tori began a free podcast called, Markets Made Simple, to enable others to financially empower themselves by breaking down otherwise complex concepts into layman's terms. *See* PSR at 12. His podcast reflects his love for teaching others, as he once did as a tutor, *see* Exhibit S; Exhibit T, following receipt of his master's degree.

Mr. Tori is "always looking to grow, both intellectually and emotionally. He learns from every experience that he has and this, while extremely unfortunate, has clearly marked a turning point in his life for the better." Exhibit D. Mr. Tori has addressed his current legal circumstances with maturity and accountability. He has cooperated during the totality of the process, even pausing his studies to attend to this criminal case. For those close to him, like his sister, "the most striking part . . . has been to witness his calm determination to not only get through this but learn as much as he can about himself and the life he wants to lead going forward." *Id.*

It is clear that Mr. Tori is a man of great integrity who made a terrible decision. Who he was years ago during the instant conduct is not the same person now before the Court. Mr. Tori has "sincerely resolved to lead his life in a much more mature and thoughtful way. Despite his shame, he seems to also have a generally positive outlook on the future, determined to move forward with honesty and learning from past mistakes." Exhibit L. Given the chance, Mr. Tori will "continue to do well and will contribute only good things to [his] family, friends[,] and community." Exhibit B.

### C. Mr. Tori Poses Little Risk of Recidivism

Of all the purposes of sentencing, the need to protect the public from further crimes of the defendant is one of great practical concern and is the most capable of being measured. Fortunately, Mr. Tori does not fit the archetype of a person who will commit new criminal offenses or recidivate. And, because of the reinvigorated role of the judiciary in sentencing, judges can now impose sentences that take such research into consideration to more effectively impose sufficient, but not greater than necessary, sentences.

The judiciary's bolstered role is especially important given the Commission's own findings that "[t]here is no correlation between recidivism and Guidelines' offense level. Whether an offender has a low or high guideline offense level, recidivism rates are similar. While surprising at first glance, this finding should be expected, as the Guidelines' offense level has long been recognized as "[n]ot intended or designed to predict recidivism." U.S. Sentencing Comm'n, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* at 15 (May 2004) [hereinafter *Measuring Recidivism*]. Thus, the Guidelines are at odds with 18 U.S.C. § 3553(a)(2)(C). Accordingly, *Booker*, 125 S. Ct. 738, has freed the judiciary to remedy this inconsistency.

In addition to what has already been described about Mr. Tori's character demonstrating his ability to reform, the Commission has also objectively quantified his low likelihood of recidivism. For example, the Sentencing Commission's study confirms that recidivism rates decline relatively consistently as age increases. *See Measuring Recidivism* at 12. More specifically, with respect to Mr. Tori, who has a college degree, defendants who have a criminal history category of I and a college level education at the time of the respective offense have a recidivism rate of only 7.1%. *See id.* at 29. There is, quite simply, nothing in the record to make this Court reasonably believe that Mr. Tori would commit any criminal offense in the future.

The Commission has also found that first offenders like Mr. Tori are rarely reconvicted of a crime. In fact, only 3.5% of first offenders with 0 criminal history points are ever reconvicted. *See* U.S. Sentencing Comm'n, *Recidivism and the First Offender*, at 26 (May 2004) [hereinafter *First Offender*]. Only 11.7% of all first offenders ever find themselves back in the criminal justice system (defined as reconviction, re-arrest, or revocation). *See id.* The instant conviction is Mr. Tori's first conviction, and the experience taught him a valuable life lesson to ensure he does not repeat the mistakes of the past.

It is unfortunate that the Guidelines' offense levels do not take into consideration such data. Such data exists yet is not utilized to inform the Commission's rulemaking. However, without even considering the circumstances of the offense, it is apparent that Mr. Tori is not a person who is statistically likely to recidivate. And, when one considers such statistics in light of Mr. Tori's personal history, characteristics, and support system, it is safe to assume that he will never again be arrested or charged with an offense.

### F.     Mr. Tori's Public Demise is Adequate Deterrence to Others

Section 3553(a)(2)(B) requires the Court to consider "the need for the sentence imposed to afford adequate deterrence to criminal conduct." Arguably, the government has already substantially achieved the maximal deterrent effect of Mr. Tori's offense simply by charging and convicting him. As a result, Mr. Tori's name and the substance of his offense will be discussed in numerous conversations and settings among family, friends, professional peers, and the community for years to come—a shameful reality from which he simply cannot escape. In short, Mr. Tori's public demise sends a strong message to anyone foolish enough to engage in similar offenses.

### G.     Avoiding Unwarranted Sentencing Disparities[2]

An additional factor to consider is the "need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Treatment of similarly situated defendants in the federal court related to Yukom's operations supports Mr. Tori's request for the Court to impose a sentence of 6 months' of incarceration. For instance, based on the total offense level of 26, Mr. Tori's Guidelines' range would be 63-78 months. Anog Mareek, who had a Guidelines' range of 63-78, received a prison term of 8 months. *See United States v. Mareek*, No. 8:19-cr-00077-9 (D. Md.). As another example, Gilad Mazugi, who had total offense level of 26 per the terms of his plea agreement, received a prison term of 10 months. *See United States v. Mazugi*, No. 8:19-cr-00077-12 (D. Md.). Like Mr. Tori, Mr. Mareek and Mr. Mazugi were not managers or supervisors. However, where individuals were managers or supervisors, the Court imposed notably higher sentences. *See Untied States v. Bigleman*, No. 8:19-cr-00077-5 (D. Md.); *Untied States v. Maymon*, No. 8:19-cr-00077-3.

---

[2] The data in the table below is derived from information on the respective dockets, judgments, or plea agreements or was provided to defense counsel via the respective defendants' attorneys or other sources.

| NAME | U.S. CODE SECTION(S) | DISPOSITION | LOSS | U.S.S.G. RANGE OR TOTAL OFFENSE LEVEL | SENTENCE |
|---|---|---|---|---|---|
| **EREZ, No. 8:19-cr-00077-15** | 1349 | Guilty Plea | $528,625 | 33-41 | 1 day |
| **HADAR, No. 8:19-cr-00108-1** | 1349 | Guilty Plea | $1,200,00 | 41-51 | 8 mos. |
| **MAAREK, No. 8:19-cr-00077-9** | 1349 | Guilty Plea | $1,591,077 | 63-78 | 8 mos. |
| **MEL, No. 8:18-cr-00571-1** | 371 | Guilty Plea | $288,024 | 30-37 | 12 mos., 1 day |
| **SMITH, No. 8:19-cr-00087-1** | 1349 | Guilty Plea | $486,199 | 33-41 | 12 mos., 1 day |
| **WELLES, No. 8:18-cr-00613-1** | 371 | Guilty Plea | $2,395,310 | 46-57 | 14 mos. |
| **MAYMON, No. 8:19-cr-00077-3** | 1349 | Guilty Plea | $1,899,074 | 29 | 36 mos. |
| **BIGELMAN, No. 8:19-cr-00077-5** | 1349 | Guilty Plea | $3,766,449 | 30 | 36 mos. |
| **MAZUGI, No. 8:19-cr-00077-12** | 1349 | Guilty Plea | $1,531,341 | 26 | 10 mos. |
| **HAIM, No. 8:19-cr-00077-13** | 1349 | Guilty Plea | $1,348,424 | 24 | 1 day |
| **BISHARA, No. 8:19-cr-00077-14** | 1349 | Guilty Plea | $1,130,488 | 24 | 7 mos. |
| **ELBAZ, No. 8:18-cr-00157-1** | 1349, 1343 (x3) | Trial | $28,000,000 | 30 | 264 mos. |
| **UZAN, No. 8:18-cr-00608-1** | 371 | Guilty Plea | $1,819,595 | 23 | 4 mos. |
| **HADAR, No. 8:18-cr-00108-1** | 1349 | Guilty Plea | $1,200,00 | 22 | 8 mos. |

## VI.    RESTITUTION

Upon review of the other Judgments in the above-listed case and the related cases discussed above, Mr. Tori withdraws his objection to the imposition of joint and several restitution with Lee Elbaz.

## VII.    CONCLUSION

In light of the above, Afik Tori, by and through undersigned counsel, respectfully requests that the Court impose a sentence of 6 months of incarceration.

Respectfully submitted,

_____/s/_____
David Benowitz, Bar No. 17672
Amy C. Collins, Bar No. 30447
Price Benowitz LLP
409 7th Street, NW, Suite 200
Washington, D.C. 20004
Tel: (202) 417-6000
Fax: (202) 664-1331
David@PriceBenowitz.com
AmyC@PriceBenowitz.com

*Counsel for Afik Tori*

## **CERTIFICATION**

    I HEREBY CERTIFY that on this 15th day of November 2023, I caused a true and correct copy of the foregoing Defendant's Memorandum in Aid of Sentencing to be delivered via CM/ECF to all parties.

                                                                        _____/s/_____
                                                                        Amy C. Collins